■ In the Matter of the Claim of MARY E. WERNER, Respondent. CBA INDUSTRIES, INC., Appellant; JOHN F. HUDACS, as Commissioner of Labor, Respondent. [619 NYS2d 379] —Mikoll, J. P. Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 5, 1993 and June 4, 1993, which, *inter alia,* assessed CBA Industries, Inc. for additional unemployment insurance contributions.

Claimant entered into a contract with CBA Industries, Inc. (hereinafter the distributor) whereby she was to deliver a free weekly shopping paper along with advertising inserts to residents throughout Nassau and Suffolk Counties on behalf of the distributor. The contract designated claimant as an independent contractor. The local unemployment insurance office ruled that claimant and others similarly situated were employees and its findings were upheld by an Administrative Law Judge (hereinafter ALJ). The distributor objected to the ALJ's determination. The Unemployment Insurance Appeal Board in two decisions affirmed the ALJ's determination, adopting her findings and opinion. These appeals by the distributor ensued.

The ALJ found the following circumstances in the instant case determinative of an employer-employee relationship: (1) the delineation of a period of time in which the work had to be done, (2) a requirement that the work be done properly on pain of losing the contract, (3) setting of a price (for delivery) according to industry standards, (4) supplying of plastic bags into which the deliverers were to place the flyers, (5) holding of an informative meeting at which claimant and other potential deliverers were instructed as to routes available and that they should fling the flyers onto front lawns, close to doorsteps if possible, (6) the distributor did checks to ascertain whether the work was done, (7) if a route was not covered, the distributor took steps to fill the route by hiring other deliverers, and

(8) the deliverers were an integral part of the distributor's business.

The issue before us is whether the record supports the finding of an employer-employee relationship by substantial evidence. The Board is empowered to decide this factual issue based on the evidence presented. An employer-employee relationship exists when control over the results produced or over the means used to achieve the results is exercised, the latter being the more important factor to be considered (see, *Matter of Field Delivery Serv. [Roberts]*, 66 NY2d 516, 521). In *Matter of Ted Is Back Corp. (Roberts)* (64 NY2d 725, 726), the Court of Appeals noted that "incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship".

Relying on the Board's decision in *Matter of Mid-Hudson Publ. (Kingston Daily Freeman Div.—Roberts)* (119 AD2d 959, *lv denied* 68 NY2d 609), the distributor contends that the instant matter is controlled thereby. We concur. Each deliverer had a considerable window of time in which to get their assignment done. It stretched from 2:00 P.M. on each Friday through Sunday morning when delivery was to be effected so that readers could react to sales offers made in the material. The time in which to do the work was broadly stated. It was the deliverer who decided when the work would be done.

Although a price for service was set according to industry standards, the record discloses that wages were subject to negotiation depending on circumstances. This is reflective of an independent contractor status. Claimant and each deliverer was free to hire others to fulfill their contractual obligation without any restriction or approval from the distributor. Claimant retained sole responsibility for finding substitutes but, failing in her resources, could ask the distributor for a list of persons interested in routes. Such abdication of control over who did the work denotes an independent contractor status. Claimant received none of the typical employee benefits and was issued a 1099 Independent Contractor tax form at the end of the year. Significantly, claimant also was not reimbursed for expenses and had to supply all items necessary to do her work (e.g., a car, cartons or bags to contain the flyers). Such circumstance is reflective of independent contractor status.

We find the distributor's issuance of plastic bags to protect the flyers from the elements not reflective of control. We note that no control apparatus was in place to check use of the

plastic bags. The distributor simply offered a convenient method of distribution of several flyers and any other papers of competing distributors for whom claimant and other deliverers might choose to work. We note too that the distributor gave its deliverers complete carte blanche as for whom else they delivered material.

Claimant and other similarly situated persons were solicited through advertising and though the ALJ found the initial meeting with the distributor reflective of an employer-employee relationship, we find it neutral in its implications. It was informational in its character and certainly not a training session by any means. The attendees were informed of the purpose of their possible engagement as deliverers, that the flyers should be left as close as possible to doorsteps, the necessity to deliver by Sunday morning, the routes available and where to pick up papers. Those who displayed interest in the work signed an independent contractor agreement. The information supplied would have to have been given to an independent contractor in the same measure as to an employee.

The requirement that the work be done properly is a condition just as readily required of an independent contractor as of an employee and not conclusive as to either. The standard of performance was general in nature and a reasonable requirement of either employment or of an independent contractor situation.

Finally, the spot checks made by the distributor as to delivery of the flyers is a wise business decision (see, Matter of Green Engraving Corp. [Roberts], 95 AD2d 904, 905) and its exercise here does not support a finding of control over the means to achieve the results. The distributor was entitled to know if its deliverers were doing their work.

Crew III, and Peters, JJ., concur.

Casey, J. (dissenting). The facts in this case are sufficiently distinguishable from the facts in Matter of Mid-Hudson Publ. (Kingston Daily Freeman Div.—Roberts) (119 AD2d 959, lv denied 68 NY2d 609) to permit the Unemployment Insurance Appeal Board to reach a different conclusion (cf., Matter of Field Delivery Serv. [Roberts], 66 NY2d 516, 520-521). In contrast to the factors found to be decisive on the issue of lack of control by the Board in the Mid-Hudson case, the distributor in this case established deadlines, made territorial route assignments, conducted periodic spot-checks and established procedures for its investigation of customer complaints. In the

circumstances of this case, the Board was justified in concluding that the distributor exercised sufficient control over the carriers to establish their status as employees *(see, e.g., Matter of Campano [Distribution Sys.—Hudacs],* 201 AD2d 781), and the majority has erred by substituting its judgment for that of the Board.

Ordered that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.