■ In the Matter of LOCAL 54 UNITED PAPERWORKERS INTERNATIONAL UNION, Appellant. COMMISSIONER OF LABOR, Respondent. [754 NYS2d 439] —Mugglin, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed August 13, 2001, which ruled that Local 54 United Paperworkers International Union was liable for unemployment insurance for compensation paid to its officers.

Local 54 United Paperworkers International Union represents approximately 526 workers at Sealright, Inc. Its collective bargaining agreement with Sealright contains a "no docking" clause pursuant to which Local 54's officers may engage in certain union activity during regular work hours without suffering a loss of pay. Certain other union activity occurring during work hours is permitted by Sealright, but is not subject to the "no docking" clause. When this occurs, Local 54 reimburses its officers at their regular hourly rate for union activities during working hours, but not otherwise. Pursuant to the advice of a certified public accountant, Local 54, although it had never done so before, made unemployment insurance contributions on these payments in 1998 and 1999. In 2000, Local 54 stopped making these payments because the Workers' Compensation Board had determined that they were not required to pay premiums under the Workers' Compensation Law or the Disability Benefits Law. Local 54 requested a determination from the Department of Labor that it was exempt from paying unemployment insurance premiums. The Department denied the request and, following a hearing, an Administrative Law Judge determined that the union was liable for such payments. This determination was affirmed by the Unemployment Insurance Appeal Board (hereinafter Board) and Local 54 now appeals to this Court arguing that the Board's decision is contrary to law and not supported by substantial evidence, and that the unemployment insurance laws of New York are preempted by the National Labor Relations Act.

Central to the first issue presented is whether Local 54's officers are its employees. Whether there is such an employment relationship is a question for the Board, and even if there is evidence to the contrary, if the Board's decision is supported by substantial evidence, it must be upheld (*see Matter of Rivera [State Line Delivery Serv.—Roberts]*, 69 NY2d 679, 682, *cert denied* 481 US 1049; *Matter of Rivera [AIA Envtl. Corp.— Commissioner of Labor]*, 262 AD2d 898, 899; *Matter of Middletown [Manzi Taxi & Transp. Co.—Hartnett]*, 166 AD2d 758, 759, *lv denied* 77 NY2d 803). "Although a determination that an employer-employee relationship exists may rest upon evidence that the employer exercises either control over the results produced or over the means used to achieve the results, control over the means is the more important factor to be considered. Thus, incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship" (*Matter of Ted Is Back Corp. [Roberts]*, 64 NY2d 725, 726 [citations omitted]). Other factors considered by courts to determine if a person is an employee are whether (1) the person received training, supervision or instruction (*see Matter of Cromer [Transworld Sys.— Sweeney]*, 248 AD2d 773, 773-774), (2) the person could be fired (*see Matter of Middletown [Manzi Taxi & Transp. Co.— Hartnett]*, *supra* at 759), (3) the person's schedule was set by the alleged employer or the person worked at his or her convenience, (4) the person was reimbursed for expenses, (5) taxes were withheld from compensation paid (*see Matter of Ted Is Back Corp. [Roberts]*, *supra* at 726) and (6) the type of tax form issued (*see Matter of Werner [CBA Indus.—Hudacs]*, 210 AD2d 526, 527, *lv denied* 86 NY2d 702).

Although there is evidence which would support each side's arguments, we conclude that the Board's decision is supported by substantial evidence since, while working on union business during regular hours where the officer is docked by the employer and paid by the union, the union not only reimburses the officers for expenses incurred during the performance of such duties, but taxes are withheld from these payments and a W-2 form is issued to the officers for filing with their federal tax returns. Moreover, even if the Workers' Compensation Board concluded that Local 54 is not an employer, its determination under one statute is not binding on the Board when the same question arises under a different statute (*see Matter of Scott v Manzi Taxi & Transp. Co.*, 179 AD2d 949, 951, *lv denied* 80 NY2d 752). Also, while *Matter of Kaminski (Catherwood)* (14 AD2d 178) is not directly on point, it is precedent for

combining wages paid by a union to a shop steward (whose activities were controlled by union officers), on which unemployment insurance premiums had been paid, with the wages paid the shop steward by the employer to determine the proper unemployment rate for the claimant.

We next address the preemption issue. When state laws regulate and interfere with conduct protected by the National Labor Relations Act, "due regard for the federal enactment requires that state jurisdiction must yield" (*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v Garmon*, 359 US 236, 244). However, states should continue to regulate areas of "a merely peripheral concern of the Labor Management Relations Act" (*id.* at 243), "[o]r where the regulated conduct touched interests so deeply rooted in local feeling and responsibility" (*id.* at 244). "Congress has been sensitive to the importance of the States' interest in fashioning their own unemployment compensation programs and especially their own eligibility criteria" (*New York Tel. Co. v New York State Dept. of Labor*, 440 US 519, 539). It is our view that Local 54's argument, that if it is forced to pay unemployment insurance premiums it will be discouraged from compensating union officers for lost work time and that, in turn, will discourage union members from serving as officers, addresses only a peripheral concern of the Labor Management Relations Act, especially when compared to the regulation and collection of unemployment insurance benefits by New York's Department of Labor, one of its core functions which is indisputably of substantial economic importance to the state. Hence, we hold that the National Labor Relations Act does not preempt New York's unemployment insurance statute.

Mercure, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the decision is affirmed, without costs.