*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:    November 5, 2015                     519702
_____

In the Matter of the Claim of
   DWAYNE E. SCOTT,
                 Respondent.

CR ENGLAND INC.,                          MEMORANDUM AND ORDER
                 Appellant.

COMMISSIONER OF LABOR,
                 Respondent.

(And Three Other Related Claims.)
_____


Calendar Date:   September 10, 2015

Before:   Lahtinen, J.P., Garry, Lynch and Devine, JJ.


_____


    Strongin Rothman & Abrams, LLP, New York City (Barry S. Rothman of counsel), for appellant.

    Murphy, Burns, Barber & Murphy, LLP, Albany (Catherine A. Barber of counsel), for Dwayne E. Scott, respondent.

    Eric T. Schneiderman, Attorney General, New York City (Dawn A. Foshee of counsel), for Commissioner of Labor, respondent.


_____


Garry, J.

    Appeals from eight decisions of the Unemployment Insurance Appeal Board, filed November 26, 2013, which ruled, among other things, that CR England Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimants and others similarly situated.

CR England Inc. is a for-hire authorized motor carrier under permit from the US Department of Transportation, with headquarters in Utah. Claimants, who are New York residents, performed services for CR as long-haul tractor-trailer truck drivers transporting freight throughout the continental United States, pursuant to an agreement providing that they were independent contractors (hereinafter the agreement). After claimants applied for unemployment insurance benefits, the Department of Labor (hereinafter DOL) determined that claimants and others similarly situated were employees rather than independent contractors and that CR was liable for additional tax contributions. The claims were subsequently consolidated. Following a hearing requested by CR, an Administrative Law Judge determined, among other things, that claimants were employees and that CR's requests regarding claimants Thomas R. Stevens and Michael P. Murtagh were untimely. Upon appeal, the Unemployment Insurance Appeal Board sustained the decisions. CR appeals.

Initially, CR contends that claimants did not engage in covered employment within New York as defined in Labor Law § 511 (3) (c). This claim is raised for the first time upon appeal. We reject CR's contention that it is jurisdictional and may therefore be asserted at any time. The Labor Law charges DOL and the Board with the duty of determining whether a claimant engaged in covered employment (see Labor Law §§ 511, 597, 621 [3]). In carrying out this statutory obligation, a determination that a claimant was not so engaged results in a finding that the claimant is ineligible for unemployment insurance benefits, but does not affect the agency's jurisdiction over the claim (see e.g. Matter of Allen [Commissioner of Labor], 100 NY2d 282, 287-288 [2003]). As this contention was thus required to be preserved, it is not properly before this Court and will not be considered (see Matter of Horvath [Residence Inn/Buffalo Lodging Assoc., L.L.C.-Commissioner of Labor], 32 AD3d 1089, 1089 [2006]; Matter of Altman [Commissioner of Labor], 3 AD3d 658, 659 [2004]).

The Board did not err in determining that the hearing requests relative to Stevens and Murtagh were untimely. "Pursuant to Labor Law § 620 (2), an employer has 30 days to request a hearing after the mailing or personal delivery of a

notice of determination from which it claims to be aggrieved" (Matter of Preyer [Dische-Commissioner of Labor], 121 AD3d 1216, 1216 [2014], appeal dismissed 24 NY3d 1204 [2015], lv denied 25 NY3d 906 [2015] [citation omitted]; accord Matter of Tartaglia [Aegis Capital Corp.-Commissioner of Labor], 128 AD3d 1304, 1305 [2015]; see 12 NYCRR 461.2). As to Stevens, DOL issued a notice of determination dated January 17, 2008 finding that he was an employee and not an independent contractor. This determination further directed CR to submit amended quarterly reports and to pay contributions on Stevens' earnings and those of all other similarly employed persons dating back to "at least the first quarter of 2005." On January 25, 2008, DOL issued a separate determination awarding him benefits. CR submitted a request for a hearing dated February 25, 2008. This request referenced only the determination of January 25, on the stated basis that Stevens had been discharged for misconduct; neither the initial determination nor the issue of classification was mentioned. CR thereafter requested a hearing on the issue of Stevens' classification in May 2008. Contrary to CR's contention, we find that it was aggrieved by the requirements of the initial determination, notwithstanding the fact that benefits were subsequently awarded, and it was required to make a timely request for a hearing (see Labor Law § 620 [2]).

CR's February 25, 2008 request for a hearing was filed within the statutory period applicable to the January 17, 2008 determination, as it is deemed to have received that determination no later than five business days following the date on the determination (see 12 NYCRR 461.2). Nonetheless, the inferences to be drawn from the language of the February 25, 2008 request posed factual issues for the Board to resolve. On this record, the Board was not bound to conclude that the limited request made by CR encompassed either the January 17, 2008 determination or the issue of Stevens' classification, and we thus defer to the Board's determination of this issue (compare Matter of Chism [Community Blood Council of Greater N.Y.-Levine], 42 AD2d 914, 915 [1973]).

DOL issued a notice of determination relative to Murtagh on April 18, 2008, which classified him as an employee, but later determined that he was ineligible for benefits on another ground.

CR was aggrieved by the classification determination, which imposed the same requirements upon CR as the classification determination pertaining to Stevens.  Nevertheless, CR failed to request a hearing until July 2, 2008.  Although CR argues that its delays in both instances should be excused, as it reasonably believed that it was not aggrieved for unemployment insurance purposes if no benefits were awarded, "the statutory time period in which to request a hearing is to be strictly construed, and the statute contains no provision permitting an extension of time in which an employer can request a hearing" (Matter of Rago [Resource One, Inc.-Commissioner of Labor], 22 AD3d 1002, 1002 [2005]; accord Matter of Hickman [Maximum Litigation Support Servs., LLC-Commissioner of Labor], 111 AD3d 1000, 1000 [2013]; Matter of Agarwal [Bilingual Seit & Preschool, Inc.-Commissioner of Labor], 108 AD3d 807, 808 [2013]).  Accordingly, the Board's timeliness determinations will not be disturbed.

As to the classification of claimants as employees rather than independent contractors, "[w]hether an employer-employee relationship exists is a question of fact, to be decided on the basis of evidence from which it can be found that the alleged employer exercises control over the results produced . . . or the means used to achieve the results" (Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 521 [1985] [internal quotation marks and citations omitted]; see Matter of Short [Ranger Transp.-Sweeney], 233 AD2d 676, 677 [1996]).  The record reveals that CR requires all newly hired drivers, upon completing an initial training period, to choose whether they will provide services as independent contractors or employees; claimants chose to be independent contractors and signed the agreement identifying them as such.  CR asserts that the agreement gives it markedly less control over claimants and others who elect the status of independent contractors than it has over drivers who elect to work as employees.  For example, claimants were not required to report to CR daily although employee drivers were, and claimants were free to refuse load assignments and select their own routes, while employee drivers were not.

CR further asserts that the trucking industry is heavily regulated and that many provisions in the agreement that appear to limit or control its relationship with claimants — such as

requirements obliging claimants to display signs indicating that their trucks were being operated by CR and prohibiting them from carrying passengers without CR's consent – are in fact required by federal statutes and regulations.  We agree that compliance with government requirements, by itself, "should not be found to be dispositive of an employee-employer relationship" (Matter of Choto v Consolidated Lbr. Transp., Inc., 82 AD3d 1369, 1370 [2011]; see 49 CFR 376.12 [c] [1]; see generally Matter of Leazard [TestQuest, Inc.-Commissioner of Labor], 74 AD3d 1414, 1414-1415 [2010]; Matter of Wannen [Andrew Garrett Inc.–Commissioner of Labor], 57 AD3d 1029, 1030 [2008]).  However, here the Board did not rely solely upon required regulatory terms but, instead, found that the agreement went beyond regulatory requirements in several respects that gave CR control over the means by which claimants fulfilled their work responsibilities.[1]

CR required claimants to use electronic on-board recorders in their trucks and installed them at CR's cost if claimants' trucks did not have them.  The regulations do not mandate the use of these devices but, instead, provide alternative means of compliance (see 49 CFR 395.8, 395.15).  CR also reimbursed claimants for certain tolls, required claimants to load and unload freight, and compensated claimants for performing this task or for their expenses in hiring workers to do so; the applicable regulations specify only that contracts between motor carriers and drivers must indicate which party will be responsible for these duties and expenses and the terms of such compensation (see 49 CFR 376.12 [e]).  Notably, claimants were required to work exclusively for CR.  Additionally, CR established the rates by which claimants were paid, bore the risk of loss by paying claimants whether or not the customer paid CR

---

[1]  The regulations require motor carriers to establish safety management controls and maintain satisfactory safety ratings (see 49 CFR 385.5, 385.7 [a], [b]; 390.11). The Board erred insofar as it determined that CR exceeded its regulatory obligations by requiring claimants to undergo retraining when CR deemed it necessary; this met, but did not exceed, these regulatory standards.

for the load, required claimants to contribute to a reserve fund for safety-related truck repairs and maintenance, arranged for claimants' insurance — deducting the cost from their pay — and dealt with customer complaints about claimants' services.  Thus, we find that the record as a whole contains substantial evidence supporting the Board's determination that claimants were CR's employees (see Matter of Wright [Central Transp., Inc.-Commissioner of Labor], 58 AD3d 988, 989-990 [2009], appeal dismissed 12 NY3d 843 [2009]; Matter of Short [Ranger Transp.-Sweeney], 233 AD2d at 677-678; compare Matter of Choto v Consolidated Lbr. Transp., Inc., 82 AD3d at 1369-1370).

Lahtinen, J.P., Lynch and Devine, JJ., concur.


ORDERED that the decisions are affirmed, without costs.


ENTER:

Robert D. Mayberger
Clerk of the Court