*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  June 2, 2016                 519947
_____

In the Matter of the Claim of
    BRIAN J. BOGART,
                    Respondent.

LaVALLE TRANSPORTATION, INC.,               MEMORANDUM AND ORDER
                    Appellant.

COMMISSIONER OF LABOR,
                    Respondent.
_____

Calendar Date:  March 22, 2016

Before:  Lahtinen, J.P., McCarthy, Garry, Rose and Mulvey, JJ.

_____

        Barclay Damon LLP, Syracuse (Michael J. Sciotti of
counsel), for appellant.

        Kelly Egan, Rensselaer, for Brian J. Bogart, respondent.

        Eric T. Schneiderman, Attorney General, New York City (Mary
Hughes of counsel), for Commissioner of Labor, respondent.

_____

Lahtinen, J.P.

        Appeals from two decisions of the Unemployment Insurance
Appeal Board, filed January 2, 2014, which ruled, among other
things, that LaValle Transportation, Inc. was liable for
additional unemployment insurance contributions on remuneration
paid to claimant and others similarly situated.

        LaValle Transportation, Inc. is a commercial trucking
company providing freight transportation services nationwide.
Some of the local routes are driven by individuals who are

employees of LaValle, whereas the long-haul trucking is done by drivers who own or lease their vehicles and work under transportation service agreements as independent contractors. When claimant — who had been a long-haul trucker — filed for unemployment insurance benefits after his work with another company ended, the Department of Labor indicated to him that his earlier time with LaValle might be considered as part of his necessary employment history (see Labor Law § 527 [1], [2]) despite his representation that he had been an independent contractor and not an employee of LaValle. The Department audited LaValle's operations from January 1, 2006 to December 31, 2008 and determined that claimant and other similarly situated truck drivers were, in fact, employees of LaValle. The Department assessed LaValle $124,000.17 for contributions during that time frame.[1] LaValle objected and, following a hearing, an Administrative Law Judge overruled the Department. However, upon administrative appeal, the Unemployment Insurance Appeal Board reversed the Administrative Law Judge and found that LaValle was an employer of the truck drivers for purposes of the Labor Law. LaValle appeals.

"'An employer-employee relationship exists when the evidence shows that the employer exercises control over the results produced or the means used to achieve the results' with the second factor deemed to be more important" (Matter of Cohen [Classic Riverdale, Inc.—Commissioner of Labor], 136 AD3d 1179, 1179 [2016], quoting Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]). Although the Board's determination of an employment relationship "will be upheld if supported by substantial evidence, 'incidental control over the results produced, alone, will not constitute substantial evidence that an employment relationship exists'" (Matter of Richins [Quick Change Artistry, LLC—Commissioner of

---

[1] The parties agree that inasmuch as the period in dispute predates the April 10, 2014 effective date of Labor Law article 25-C (see L 2013, ch 558, § 1; L 2014, ch 7, § 1), such statute is inapplicable to the current dispute. The holding herein is limited to the law as it existed prior to the enactment of such statute.

Labor], 107 AD3d 1342, 1343-1344 [2013] [internal citation omitted], quoting Matter of Best [Lusignan—Commissioner of Labor], 95 AD3d 1536, 1537 [2012]).  Moreover, where, as here, some of the indicia of control are mandated by laws or regulations, such fact, while "considered as part of the overall calculus of control," by itself is "not sufficient to establish an employer-employee relationship" (Matter of Harold [Leonard's Transp.—Commissioner of Labor], 133 AD3d 1069, 1070 [2015] [internal quotations marks omitted], lv dismissed 26 NY3d 1136 [2016]; accord Matter of Cohen [Just Energy Mktg. Corp.—Commissioner of Labor], 117 AD3d 1112, 1112-1113 [2014], lv dismissed 24 NY3d 928 [2014]; see Matter of 12 Cornelia St. [Ross], 56 NY2d 895, 898 [1982]; Matter of Leazard [TestQuest, Inc.—Commissioner of Labor], 74 AD3d 1414, 1414-1415 [2010]; Matter of McCabe & Willig Realty [Ross], 80 AD2d 935, 936 [1981]).

     Here, long-haul drivers called a LaValle dispatcher to find out what loads were available.  The drivers were free to accept or reject any load without penalty from LaValle.  Simply stated, they could work when and if they wanted or not at all.  Significantly, and unlike Matter of Harold (Leonard's Transp.—Commissioner of Labor) (133 AD3d at 1071) and Matter of Scott (CR England Inc.—Commissioner of Labor) (133 AD3d 935, 939 [2015]), the drivers were not required to work exclusively for LaValle and were free to accept jobs with other companies.  Moreover, they were not required to lease their vehicles from LaValle.  In fact, it is undisputed that about 40% of the drivers owned their vehicles and, of the remaining 60%, only about half leased from LaValle.  Subject to compliance with insurance and regulatory requirements, the drivers who agreed to transport loads were allowed to hire other drivers to make the delivery and, in fact, some did so.  The compensation rate for the drivers was not set solely by LaValle.  Although drivers typically received 70% of the gross revenue for transporting the load, they were free to negotiate a higher percentage from LaValle, and the record reflects that such higher negotiated rates were not rare.

     No one from LaValle supervised the drivers.  They were free to choose whatever routes they desired in transporting loads.  The drivers received no fringe benefits, there was no dress code,

they were not required to attend meetings, they were not trained by LaValle and they were not reimbursed for their expenses. Drivers carried their own independent business cards. Claimant testified that he considered himself an independent contractor. He was issued an IRS 1099 form, and he reported that he was self-employed on his state and federal taxes. Many of the factors cited by the Board were required by federal regulations or insurance carriers, and the fact that there was a limited noncompete clause in the transportation service agreement is not dispositive (see Matter of Clarke [Select Med. Corp., Inc.—Commissioner of Labor], ___ AD3d ___, ___, 2016 NY Slip Op 03934, *1 [2016]; Matter of Wright [Mid Is. Therapy Assoc. LLC—Commissioner of Labor, 134 AD3d 1216, 1218 [2015]). LaValle and the long-haul drivers met virtually none of the criteria typically considered for an employer-employee relationship (see e.g. Matter of Spielberger [Commissioner of Labor], 122 AD3d 998, 999 [2014]; Matter of Local 54 United Paperworkers Intl. Union [Commissioner of Labor], 301 AD2d 922, 923 [2003]; Matter of Cromer [Transworld Sys.—Sweeney], 248 AD2d 773, 774 [1998]; see also Department of Labor Guidelines, Independent Contractors, http://www.labor.ny.gov/formsdocs/ui/IA318.14.pdf [accessed Apr. 25, 2016]; Jonathan L. Sulds, New York Employment Law § 2.02 [2]). While there was some "incidental control over ancillary matters . . ., the record as a whole lacks substantial evidence of the requisite level of control . . . so as to establish the existence of an employer-employee relationship" (Matter of Richins [Quick Change Artistry, LLC—Commissioner of Labor], 107 AD3d at 1344; see generally Matter of Hertz Corp. [Commissioner of Labor], 2 NY3d 733, 735 [2004]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 179-180 [1978]; Matter of Choto v Consolidated Lbr. Transp., Inc., 82 AD3d 1369, 1369-1370 [2011]).

Briefly addressing the dissent. The dissent looks initially to the equipment lease agreement between claimant and LaValle for indicia of control. However, in its detailed decision, the Board placed no reliance on the lease. The Board's decision sought to sweep all drivers associated with LaValle (the majority of whom did not lease from LaValle) into the employee category, an overreach by the Board that the dissent appears to acknowledge. Moreover, the transportation service agreement's

language regarding "exclusive possession, control, and use" found in paragraph 6 is required by federal regulation when there is a lease (see 49 CFR 376.12 [c] [1]), and that same regulation provides that nothing in paragraph (c) (1) is intended to affect whether a driver is an employee or independent contractor (see 49 CFR 376.12 [c] [4]).  Similarly, paragraph 24 of the transportation service agreement, which is quoted in part by the dissent, also makes repeatedly clear that the provisions therein are made to comply with the regulations and requirements of the Federal Motor Carrier Safety Administration.  The portion of paragraph 24 noted by the dissent that indicates LaValle is authorized to "bind" the "[c]ontractor" is followed by a sentence in the agreement stating that the "[c]ontractor has the final right of refusal on all loads."  As for the noncompetition clause, there is no indication that it was ever enforced, the proof regarding the drivers' autonomy reflects that it was not, and the Board made only a very brief mention of it with no apparent weight given thereto.

Garry and Mulvey, JJ., concur.


Rose, J. (dissenting).

We respectfully dissent.  Given the restrictions that LaValle Transportation, Inc. placed upon claimant in this case and this Court's recent affirmances in two cases involving similar restrictions (see Matter of Harold [Leonard's Transp.–Commissioner of Labor], 133 AD3d 1069 [2015], lv dismissed 26 NY3d 1136 [2016]; Matter of Wilder [RB Humphreys Inc.–Commissioner of Labor], 133 AD3d 1073 [2015]), we disagree with the majority's reversal of the Unemployment Insurance Appeal Board's decisions regarding claimant.  Here, as to claimant, the indicia of control retained by LaValle are numerous and essentially the same as those in Matter of Harold (Leonard's Transp.–Commissioner of Labor) (supra).  The record shows that claimant was operating a truck that he leased from LaValle, and its lease imposed significant restrictions on his use of that vehicle.  He was not permitted to sublease or to allow any other party to use or operate the truck without LaValle's express consent, and he could use it with another trucking company only

if that company complied with LaValle's requirements and had its written approval (see id. at 1070). The lease also granted LaValle the right to collect all proceeds from the operation of his truck, to deduct a weekly amount of $200 to fund a repair reserve and to assign the lease and the truck to a third party while claimant had no right to assign any of his rights under the lease.

In addition to the lease, there was a transportation service agreement between claimant and LaValle that further restricted his work. That agreement stated that LaValle had "exclusive possession, control, and use of" the truck, prohibited claimant from adding lettering or advertising on the truck without LaValle's written authorization and again limited all operation of the truck to claimant or a qualified employee of claimant previously approved in writing by LaValle. Most significantly, and contrary to the majority's view that "the drivers were not required to work exclusively for LaValle and were free to accept jobs with other companies," claimant's service agreement stated: "Equipment covered by this [a]greement shall be used to provide transportation services to LaValle and other parties provided LaValle dispatches all loads" (emphasis added). In the same subparagraph, the agreement also granted LaValle the right to make the truck with a driver available to any other authorized motor carrier and authorized LaValle to "act on behalf of and bind [claimant] in the . . . execution of any further transportation service agreement entered into by Lavalle and any other authorized carrier." Claimant's compensation for his work was to be paid weekly by Lavalle in accordance with an attached schedule specifying his rate at 70% of gross revenue received by LaValle. The transportation service agreement further authorized LaValle to take physical possession of the truck if claimant "in Lavalle's opinion . . . fail[ed] to complete transportation of commodities in transit," and claimant waived any recourse against LaValle for such action.

Claimant also was bound by a two-year noncompetition restriction. This restriction forbad claimant from divulging to anyone the identity of LaValle's customers "for any purpose whatsoever" during the agreement and for two years thereafter. Further, the clause broadly forbad claimant from "compet[ing]

with Lavalle" or "injur[ing] Lavalle's business" for two years after the termination of the agreement. In addition, the geographical reach of the noncompete restriction was expansive, applying to "any state in which [claimant] has performed services pursuant to [the a]greement." When read as a whole, the clause could be construed to forbid claimant, a long-haul trucker, from driving any route that he had ever driven as a part of his work for LaValle. Accordingly, the record here presents us with a noncompetition restriction placed upon claimant that is more restrictive as to scope of activities, time and geographical reach than the noncompetition restriction examined in Matter of Harold (Leonard's Transp.—Commissioner of Labor) (133 AD3d at 1070). Moreover, although claimant had no set schedule and could decline work proposed by LaValle, he was expected to inform LaValle daily of his activities while hauling freight, to contact LaValle if he anticipated a delay of delivery and to file paperwork weekly concerning many aspects of his work (see id. at 1070-1071). Inasmuch as these indicia are so similar to those considered and found to support the Board's determination of an employer-employee relationship in Matter of Harold, a similar result should occur here (see id. at 1069; Matter of Wilder [RB Humphreys Inc.—Commissioner of Labor], 133 AD3d at 1074; see also Matter of Mitchum [Medifleet, Inc.—Commissioner of Labor], 133 AD3d 1156, 1157 [2015]; Matter of Youngman [RB Humphreys Inc.—Commissioner of Labor], 126 AD3d 1225, 1226 [2015], lv dismissed 25 NY3d 1192 [2015]; Matter of Duffy [North Am. Van Lines—Hartnett], 172 AD2d 914, 914 [1991]; Matter of Davis [RTC Transp.—Roberts], 111 AD2d 1030, 1031 [1985]).

Finally, while it was within the Board's power to extend its conclusions to all those "similarly situated" (see Labor Law § 620 [1] [b]; Matter of Mitchum [Medifleet, Inc.—Commissioner of Labor], 133 AD3d at 1157-1158), the majority considers the circumstances of other LaValle drivers regardless of how dissimilar their circumstances are to those of claimant.[1] In our

---

[1] Stating, for example, that "about 40% of the drivers owned their vehicles and, of the remaining 60%, only about half leased from LaValle." The record is clear that claimant leased his vehicle from LaValle.

view, the issue of whether drivers other than claimant are or are not employees of LaValle depends upon whether similar restrictions were actually imposed upon them. As the majority points out, the record shows that some of LaValle's drivers do not have the same restrictions. Thus, it is unlikely that they would be "similarly situated," and we would agree with the majority as to them.

Accordingly, we would affirm the Board's decisions but only as they determine claimant's relationship with LaValle and those who are actually similarly situated.

McCarthy, J., concurs.

ORDERED that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court