Matter of Jung Yen Tsai (XYZ Two Way Radio Serv., Inc.--Commissioner of Labor) (2018 NY Slip Op 07807)





Matter of Jung Yen Tsai (XYZ Two Way Radio Serv., Inc.--Commissioner of Labor)


2018 NY Slip Op 07807


Decided on November 15, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 15, 2018

525689

[*1]In the Matter of the Claim of JUNG YEN TSAI, Respondent. XYZ TWO WAY RADIO SERVICE, INC., Appellant. COMMISSIONER OF LABOR, Respondent.

Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Arkin Solbakken LLP, New York City (Deana Davidian of counsel), for appellant.
Teresa C. Mulliken, Harpersfield, for Jung Yen Tsai, respondent.
Barbara D. Underwood, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeals from three decisions of the Unemployment Insurance Appeal Board, filed December 30, 2016, which ruled, among other things, that XYZ Two Way Radio Service, Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
XYZ Two Way Radio Service, Inc. operates a black car limousine service that prearranges transportation for its clients around the New York City area. XYZ is owned by shareholders who purchase electronic tablets from XYZ to communicate with XYZ's system and work as drivers or rent out their tablets to third-party drivers. Claimant, a non-shareholder, leased a tablet from one of the shareholder-owners and performed the services of an XYZ driver from January through June 2015. Claimant left XYZ and went to work for another car service and thereafter applied for unemployment insurance benefits in November 2015. The Department of Labor determined that claimant was an employee of XYZ and was entitled to credit for remuneration paid to him by XYZ during the period he was in its employ, and held that XYZ was liable for additional contributions for remuneration paid to claimant and others similarly situated. The Unemployment Insurance Appeal Board agreed and upheld these findings in three decisions. XYZ now appeals.
We affirm. "[W]hether an employee-employer relationship exists is a factual question to be resolved by the Board and we [*2]will not disturb its determination when it is supported by substantial evidence in the record" (Matter of Raupov [Empire City Labs, Inc.-Commissioner of Labor], 155 AD3d 1284, 1285 [2017] [internal quotation marks and citations omitted]). "[S]ubstantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically" (Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d 1013, 1015 [2016] [internal quotation marks and citation omitted]). Notably, "no single factor is determinative [and] the relevant inquiry is whether the purported employer exercised control over the results produced or the means used to achieve those results, with control over the latter being the more important factor" (Matter of Link [Cantor & Pecorella, Inc.-Commissioner of Labor], 153 AD3d 1061, 1062 [2017] [internal quotation marks and citations omitted], lv dismissed 31 NY3d 946 [2018]; see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1015).
The record establishes that XYZ dispatchers arranged rides for its clients by assigning client requests to the next available XYZ driver who had signed in and queued in line in one of the covered geographic zones set by XYZ. After accepting an assignment, the driver picked up the client, who provided an XYZ voucher for the driver to complete and the client to sign, the driver transported the client to his or her desired destination, reported the assignment completed, signed back into the system and returned to the queue for the next assignment, and later turned in the voucher to XYZ; if the voucher was lost, XYZ contacted the client to recreate it. While a driver could promptly refuse an assignment, once accepted the driver could not use a substitute and was obligated to complete the trip. XYZ set the rates charged to clients based primarily upon distance traveled, reimbursed the drivers for tolls, billed the clients and paid the drivers each week a percent of the fee minus certain expenses.
The Board credited claimant's testimony that he was required to report for morning duty two to three days per week, and XYZ handled all client and driver complaints. Claimant was referred to XYZ by another driver, and was hired after he signed an application and was interviewed and screened for credentials and experience, and then trained for two days regarding the governing rules, procedures and routes. Claimant drove his own vehicle, but was required to lease the tablet from another shareholder-owner and pay for its installation in his vehicle, and XYZ placed its logo on claimant's windshield and license plate. While claimant paid for gas and vehicle expenses, XYZ regularly inspected his vehicle and established detailed rules regarding the type of vehicle used (requiring a Lincoln Town car or vehicle approved by XYZ), its age and minimum liability coverage, as well as trunk and interior condition, storage of personal items and the procedure in the event that there was an accident while a client was in the vehicle. XYZ established detailed written Daily Guidelines prescribing driver dress code, hygiene, code of conduct, procedure and language to be used in interacting with clients and claimant was subject to monetary fines and dismissal for violating XYZ's rules.
As the Board aptly concluded, XYZ imposed rules "regarding every aspect of claimant's performance" and thereby "exercised control over the results produced [and, more importantly,] the means used" to service XYZ's clients (Matter of Link [Cantor & Pecorella, Inc.-Commissioner of Labor], 153 AD3d at 1062 [internal quotation marks and citation omitted]; see Matter of Yoga Vida NYC, Inc. [Commissioner of Labor], 28 NY3d at 1015). While XYZ was obligated to comply with the rules governing the for-hire car service industry established by the Taxi and Limousine Commission, the testimony and a comparative review of the rules together established that XYZ's rules were significantly more specific and detailed or involved interpretations that often went well beyond the Commission's rules (see Matter of Raupov [Empire City Labs, Inc.-Commissioner of Labor], 155 AD3d at 1285; Matter of Scott [CR England Inc.-Commissioner of Labor], 133 AD3d 935, 938 [2015]). Indeed, an officer of XYZ explained that these additional specific requirements were designed "to satisfy the customer expectation." Thus, as we have consistently done in similar cases, we find that substantial evidence supports the Board's factual determination that claimant was an employee of XYZ, [*3]despite the existence of evidence that might support a contrary conclusion (see Matter of June Il-Kim [SUK Inc.-Commissioner of Labor], 127 AD3d 1487, 1488 [2015], lv denied 26 NY3d 901 [2015]; Matter of Khan [Mirage Limousine Serv., Inc.-Commissioner of Labor], 66 AD3d 1098, 1100 [2009], lv denied 13 NY3d 717 [2010]; Matter of Odyssey Transp., LLC [Commissioner of Labor], 62 AD3d 1175, 1175-1176 [2009]; Matter of Automotive Serv. Sys., Inc. [Commissioner of Labor], 56 AD3d 854, 855-856 [2008]). The Board properly distinguished our prior decision in Matter of Pavan (UTOG 2-Way Radio Assn.-Hartnett) (173 AD2d 1036 [1991], lv denied 78 NY2d 857 [1991]), which addressed a claim for benefits by a limousine driver who was an owner of the nonprofit membership corporation. In Pavan, the corporation was an instrument of the member-drivers that functioned as an intermediary between the drivers and the members' clients, whereas here claimant was subject to XYZ's control over the means used to produce the intended result of servicing XYZ's clients.
Further, under the circumstances, the Board's factual findings that claimant was entitled to credit for time that he worked at XYZ and was eligible for benefits in that his departure from XYZ's employment to begin another comparable job constituted good cause for leaving his XYZ employment and was not a disqualifying event, were supported by substantial evidence in the record (see Labor Law § 593 [1] [a]; Matter of Graff [Grayson-Commissioner of Labor], 18 AD3d 1055, 1055 [2005]; see also Matter of Dank [Ross], 80 AD2d 717, 717 [1981]). Although claimant's testimony on this point was somewhat confusing, the Board credited his account that he left XYZ's employment because he was not getting enough assignments and not making enough money and that, at the time that he left XYZ's employ on June 11, 2015 after providing the required two weeks' notice, he had secured new employment (see Matter of Curran [Levine], 41 NY2d 856, 857 [1977], revg on dissenting mem of Sweeney, J., 50 AD2d 681, 681 [1975]).
Contrary to XYZ's claims, the Board properly held that its findings of employment applied to all others determined to be similarly situated to claimant (see Matter of Mitchum [Medifleet, Inc.-Commissioner of Labor], 133 AD3d 1156, 1157 [2015], citing Labor Law § 620 [1] [b]; see also Matter of Crystal [Medical Delivery Servs.-Commissioner of Labor], 150 AD3d 1595, 1597 [2017]; Matter of Armbruster [Summit Health, Inc.-Commissioner of Labor], 138 AD3d 1367, 1369 [2016], lv dismissed 28 NY3d 946 [2016]). XYZ's remaining contentions have been reviewed and found to be lacking in merit.
Garry, P.J., Devine, Clark and Aarons, JJ., concur.
ORDERED that the decisions are affirmed, without costs.