■ In the Matter of the Claim of HELENA G. SEAVER, Respondent. GLENS FALLS NEWSPAPERS, INC., Doing Business as POST-STAR, Appellant; THOMAS F. HARTNETT, as Commissioner of Labor, Respondent.—Levine, J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed September 6, 1989, which ruled that claimant was entitled to receive unemployment insurance benefits and that Glens Falls Newspapers, Inc. was liable for contributions.

Claimant was one of some 35 motor route carriers (hereinafter MRCs) for Glens Falls Newspapers, Inc. (hereinafter the company), whose function was primarily to make daily home deliveries of the company's newspaper to customers on their respective routes. Following this court's affirmance of a decision by the Unemployment Insurance Appeal Board that MRCs were employees of the company *(Matter of Gray [Glens Falls Newspapers—Roberts],* 134 AD2d 791), the company revised the terms of its written contract with each MRC. Under the revised contract, in effect during the pertinent period, claimant was designated as an independent contractor and was expressly given the right to deliver to customers outside of her chosen territory, to engage in other businesses, to pick up her daily number of ordered copies of the paper at any time after printing, and to determine the order, timing and means of delivery. The contract also gave claimant the option to collect the price of newspaper delivery from subscribers or have them make prepayments directly to the company, which payments would then be credited to claimant's account. Any customer complaints were to be referred directly to claimant.

Claimant's contract with the company was terminated following an incident during claimant's pickup of newspapers

when a physical altercation allegedly occurred between the company's acting foreman and claimant's husband, who had been her assistant in making deliveries. The Board upheld the determination by the Administrative Law Judge (hereinafter ALJ), following a hearing, that claimant was an employee of the company, was not discharged for misconduct and that the company was liable for unemployment insurance contributions. This appeal ensued.

There should be a reversal because of the absence of substantial evidence that the company exercised control over the results claimant produced or the means used to achieve those results (see, *Matter of Ted Is Back Corp. [Roberts]*, 64 NY2d 725, 726). As previously described, the contract in effect at the time of claimant's termination reserved no right of control over claimant's performance by the company. Additionally, the evidence established (and the ALJ found) that, customarily, claimant negotiated the delivery price for the newspapers with subscribers, received no reimbursement for expenses from the company and was free to deliver other newspapers.

Despite the existence of the foregoing factors reflecting an absence of control of claimant's activities as an MRC, the ALJ ruled that an employment relationship could be found if the "employer is in a position whereby it can exercise direction and control (See *Matter of Morton*, 284 NY 167)". The ALJ, whose decision was adopted by the Board, found such ability to control in two respects: (1) the company determined the order in which the MRCs picked up their daily allotments of newspapers and "[t]his would have an effect on the time of delivery", and (2) the company advertised the suggested retail price for a copy of its paper without reference to delivery by an MRC and utilized the suggested price for prepaid subscriptions, thus putting itself "in a position whereby it was exercising influence over the gross earnings of claimant".

In our view, the ALJ has misapplied the holding in *Matter of Morton (supra)*. In *Morton*, the contract under review was between a claimant sales person and a company manufacturing women's undergarments, and expressly required the claimant "to pursue respondent's methods of corsetry and of salesmanship" (supra, at 173). The Court of Appeals held that this established an employment relationship "for it was by the very terms of the written contract that respondent reserved to itself, and subjected claimant to, control over the execution of the work" (supra, at 175). Contrastingly here, the contract gave claimant complete autonomy in the means of performance. The factors establishing that autonomy here were the

very same factors the Board relied upon in *Matter of Mid-Hudson Publ. (Roberts)* (119 AD2d 959, 960, *lv denied* 68 NY2d 609) to find no employment relationship between a newspaper and its delivery persons.

There is no evidence that the fixing by the company of the sequence of pickups of daily newspapers by MRCs had any actual relationship, in purpose or effect, with the timing of claimant's deliveries to her customers. Similarly, the uncontradicted evidence was that the vast majority of charges for newspapers delivered by MRCs, claimant included, were directly negotiated between the individual MRC and the customer, and at a price deviating from the company's suggested retail price. Thus, there was no proof that the company reserved the right to control claimant's performance in any respect, or that the company exercised any control in actual practice. To whatever extent the two factors relied upon by the ALJ and the Board may have indirectly affected claimant's delivery of the company's newspapers, they constituted nothing more than *"incidental control* over the results produced [which] without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship" *(Matter of Ted Is Back Corp. [Roberts], supra,* at 726 [emphasis supplied]; *see also, Matter of Lauritano [Hartnett],* 153 AD2d 997).

Decision reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Weiss, Mikoll, Levine and Harvey, JJ., concur.