■ In the Matter of SENECA NATION OF INDIANS, Appellant. JOHN E. SWEENEY, as Commissioner of Labor, Respondent. [669 NYS2d 85] —Cardona, P. J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed November 12, 1996, which, *inter alia*, assessed Seneca Nation of Indians additional unemployment insurance contributions.

Seneca Nation of Indians (hereinafter the Seneca Nation) is a Federally recognized Indian tribe which has voluntarily chosen to participate in the New York unemployment insurance program. It operates a health care agency that provides medical services to Native Americans residing on reservations. In staffing the agency, the Seneca Nation has retained medical professionals, whom it considers its employees, on a full and part-time basis. It has also contracted with other medical professionals (hereinafter referred to as the contract

professionals) under a "basic ordering agreement" whom it regards as independent contractors.

Following an audit conducted by the Department of Labor, the Seneca Nation was assessed additional unemployment insurance contributions based upon remuneration paid to the contract professionals. After an administrative hearing, an Administrative Law Judge overturned the assessment and found that the contract professionals were independent contractors. The Unemployment Insurance Appeal Board, however, reversed that decision and upheld the assessment finding that the contract professionals were employees of the Seneca Nation. This appeal by the Seneca Nation ensued.

It is well settled that the existence of an employer-employee relationship is a factual issue for the Board to decide and will not be disturbed if supported by substantial evidence in the record (see, Matter of Concourse Ophthalmology Assocs. [Roberts], 60 NY2d 734, 736). In determining the status of medical professionals who admittedly "are not subject to control to the same extent or in the same manner as others" (Matter of Salamanca Nursing Home [Roberts], 68 NY2d 901, 903), "overall control is sufficient to establish the employee relationship" (id., at 903). Determination of control is based upon a consideration of numerous factors including, but not limited to, the manner and method of payment, the location of the work, the provision of equipment and supplies, the scheduling of the work and the right to pursue other employment (see, e.g., Matter of Concourse Ophthalmology Assocs. [Roberts], supra, at 736; Matter of Boone [Shore Rd. Community Serv.—Sweeney], 245 AD2d 617, 618-619; Matter of South Shore Med. Servs. [Hudacs], 183 AD2d 1093, 1094).

In the instant case, Frederick Occhino, a physician whose status is representative of the other contract professionals, testified that he provided services at the Cattaraugus Indian Clinic while at the same time maintaining his own private practice. He stated that he was paid on an hourly basis, did not receive any fringe benefits and paid his own medical malpractice insurance. He further stated that he determined the hours he worked at the clinic and that no withholding taxes were deducted from his wages. He also stated that none of the medical professionals employed by the Seneca Nation supervised his work.

On the other hand, Occhino admitted that all services were provided at facilities owned by the Seneca Nation and that it provided all necessary equipment and supplies, as well as support staff. In addition, he stated that the medical files were

kept at the clinic. He further stated that if a conflict prevented him from making an appointment, he would advise the clinic staff who would reschedule the appointment. Occhino added that the director of the clinic was involved in setting his hourly wage.

Rae Smuder, the treasurer of the Seneca Nation who worked as director of the health agency for a number of years, testified that the contract professionals were retained under a basic ordering agreement which contained provisions different from the employment contracts entered into with the other medical professionals. According to Smuder, the basic ordering agreement was on a form supplied by Indian Health Services, a Federal agency which reimburses the Seneca Nation for the cost of certain health-related expenditures. Smuder stated that the hours worked by the contract professionals were maintained by a unit supervisor and submitted on time cards for reimbursement.

Inasmuch as the Seneca Nation maintained control over the place of work, provided all equipment and supplies, scheduled the patients and was involved in setting the hourly rate, substantial evidence supports the Board's finding that an employer-employee relationship existed even though there is evidence in the record to support a contrary conclusion (*see, Matter of Boone [Shore Rd. Community Serv.—Sweeney], supra,* at 619; *Matter of Jordan Rehabilitation Serv. [Sweeney],* 240 AD2d 988, 989). The involvement of Indian Health Services in providing the basic ordering agreement and in reimbursing certain expenditures does not compel a different result. Furthermore, we do not agree with the claim that the Board inexplicably departed from agency precedent inasmuch as we do not find a sufficient factual similarity between the instant matter and the other cases cited by the Seneca Nation (*compare, Matter of Tulumello [Coastal Emergency Servs.— Hudacs],* 211 AD2d 852). Accordingly, the Board's decision is affirmed.

Mercure, White, Spain and Carpinello, JJ., concur. Ordered that the decision is affirmed, without costs.