■ In the Matter of INTERNATIONAL STUDENT EXCHANGE, INC., Appellant. COMMISSIONER OF LABOR, Respondent. [756 NYS2d 320] —Cardona, P.J. Appeal from a decision of the Unemployment Insurance Appeal Board, filed November 21, 2001, which assessed International Student Exchange, Inc., for additional unemployment insurance contributions.

International Student Exchange, Inc. (hereinafter ISE) is a nonprofit corporation that places foreign exchange high school students with host families while attending school in the United States. ISE utilizes the services of "area representatives" to recruit host families, enroll the students in local schools, and supervise the students during their stay. ISE obtains the services of area representatives through advertising or personal referral. The representatives provide personal and professional references. Once accepted, ISE provides orientation as to the reporting demands and the relevant US State Department regulations and guidelines promulgated by the Council on Standards for International Educational Travel (hereinafter CSIET). ISE sends the prospective representative a one-year "area representative agreement," which further delineates, inter alia, their duties and rate of pay. The agreement states that area representatives are independent contractors and either party may cancel upon written notice if the other fails to fulfill its contractual obligations. Area representatives are paid exclusively by commission and provide no time sheets, they are not given any benefits such as time off with pay or compensation for expenses, nor are they obligated to attend meetings. Under certain circumstances, representatives who properly perform their duties under the contract are paid regardless of whether ISE is paid by the foreign company hired by the student's parents. They receive payment in staggered amounts and must provide student status reports in order to receive payment. Failure to submit a report results in no payment. Individual representatives who are particularly successful at placing students negotiate higher payments. Representatives are not obliged to contact ISE if they are unable to fulfill their duties due to illness and ISE does not provide a substitute representative under those circumstances.

The record indicates that, while approximately 400 to 500 area representatives may be under contract at one time, they are not all active. For example, in the year 2000, only 300 found placements. In pursuing placements, area representatives are free to accept or reject any student, and each student's name is typically given to more than one representative. Representatives are occasionally given leads by ISE to find host families, however, they primarily rely on word of mouth, advertisements and notices posted at schools and churches. ISE does not restrict representatives' territory, although State Department regulations control that aspect of the work. Representatives are free to provide services for ISE's competitors, need not report such activity to ISE, and may subcontract out any or all of their duties without the necessity of obtaining ISE's permission. In the event that students encounter "serious problem[s]" during their stay, the representatives must contact ISE which provides trained counselors as a resource, but less significant issues are generally handled locally among the representative, host family, student and school. If students or host families have complaints regarding an area representative, they generally report them directly to the State Department or CSIET.

The Unemployment Insurance Appeal Board found area representatives to be ISE employees. In arriving at that determination, it found dispositive that "[p]ay is contingent upon performing specific tasks within specific time frames. Discipline is maintained through a staggered pay schedule, the right to terminate at any time and the ability of [ISE] to bar the party from future work." ISE appeals.

As we have repeatedly indicated, the issue of whether an employer-employee relationship exists is a factual one for the Board to decide (*see Matter of Seneca Nation of Indians [Sweeney]*, 247 AD2d 732, 733). However, the determination must be supported by substantial evidence in the record. As in the instant matter, in cases where the rendering of professional services is involved, an employment relationship can be found where there is "substantial evidence of control over important aspects of the services performed other than results or means" (*Matter of Concourse Ophthalmology Assoc.*, 60 NY2d 734, 736; *see Matter of Bedin [Trussardi (USA)—Commissioner of Labor]*, 257 AD2d 809).

Here, while the factors cited by the Board such as the payment structure may constitute some evidence of incidental control over the area representatives, the record lacks sufficient evidence to establish overall control over important

aspects of the services performed so as to indicate an employer-employee relationship (*see Matter of Mulholland [Motherly Love Care—Commissioner of Labor]*, 258 AD2d 855). Instead, the proof indicates that, although the area representatives had to comply with the reporting requirements necessitated by the State Department and CSEIT guidelines (*cf. Matter of Building Blocks Dev. Pre-School [Sweeney]*, 243 AD2d 967), they nevertheless acted "essentially autonomously" in the performance of their tasks (*Matter of Bedin, supra* at 810). Accordingly, we cannot conclude that substantial evidence exists in the record to support the Board's decision (*see Matter of Monti Moving & Stor. [Sweeney]*, 241 AD2d 734).

Spain, Carpinello and Kane, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.