■ In the Matter of OMNIPOP, INC., Appellant. COMMISSIONER OF LABOR, Respondent. [891 NYS2d 717]—

Omnipop, Inc. is engaged in the business of booking entertainers for single-performance events by clients such as clubs and schools. The Unemployment Insurance Appeal Board found that the entertainers were Omnipop's employees and assessed it for additional unemployment insurance contributions. Omnipop now appeals, and we reverse.

The existence of an employer-employee relationship is a factual determination for the Board that will not be disturbed if supported by substantial evidence (*see Matter of Chorba [Sterling Testing Sys., Inc.—Commissioner of Labor]*, 54 AD3d 1091, 1092 [2008]; *Matter of Perdue [Environmental Compliance, Inc.—Commissioner of Labor]*, 47 AD3d 1139, 1140 [2008]). Such a determination involves an assessment of the extent to which the alleged employer exercises control over the results and, more importantly, the means by which those results are produced (*see Matter of Rodriguez [2020 Video Voice Data, Ltd.—Commissioner of Labor]*, 58 AD3d 929, 929 [2009]; *Matter of Chorba [Sterling Testing Sys., Inc.—Commissioner of Labor]*, 54 AD3d at 1092).

Here, we do not find sufficient indicia of control by Omnipop to support the Board's finding of an employer-employee relationship. A performer is free to reject a booking opportunity referred by Omnipop. Indeed, Omnipop plays no role in organizing any performance, and the client and performer negotiate directly with regard to the fee to be paid, with any written contract being solely between them. Moreover, the language of a sample contract prepared by Omnipop states that the performer has total control over his or her performance and that Omnipop disavows any liability for a breach by either the client or the artist. Once a booking is made, Omnipop receives a deposit from the client and places it in an escrow account. At the conclusion of the performance, the client pays the performer the balance due and, if the client reneges, the performer does not get paid. Afterward, Omnipop releases the deposit, less a commission owed Omnipop for booking, the amount of which is negotiated individually with each performer. Omnipop does not reimburse performers for any expenses incurred, nor does it maintain any type of insurance on the performers. Finally, Omnipop's representatives rarely attend, and have no control over, a performance that Omnipop has booked.

Omnipop, in short, exercises virtually no control over either the results of the performances or the means used to achieve those results. While Omnipop did make referrals, required a deposit to secure a performer for an event and fielded client complaints, given the absence of other indicia of control, such were "nothing more than a testament to [Omnipop's] intended function as an intermediary between" the performer and client (*Matter of Pavan [UTOG 2-Way Radio Assn.—Hartnett]*, 173 AD2d 1036, 1038 [1991], *lv denied* 78 NY2d 857 [1991]; *see Matter of Ted Is Back Corp. [Roberts]*, 64 NY2d 725, 726 [1984]). Accordingly, substantial evidence does not support the Board's finding that the performers were employees of Omnipop (*see Matter of Rodriguez [2020 Video Voice Data, Ltd.—Commissioner of Labor]*, 58 AD3d at 930; *Matter of HTA of N.Y. [Commissioner of Labor]*, 255 AD2d 733, 733-734 [1998]; *cf. Matter of DeSantis [Commissioner of Labor]*, 54 AD3d 1103, 1104-1105 [2008]; *Matter of Faze 4 Orchestras [Sweeney]*, 245 AD2d 929, 929 [1997]; *Matter of Captain Kishka [Hartnett]*, 158 AD2d 814, 815-816 [1990], *lv denied* 76 NY2d 708 [1990]).

Mercure, J.P., Spain, Lahtinen, Malone Jr. and Stein, JJ., concur. Ordered that the decision is reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.