■ In the Matter of the Claim of SHANICK LEAZARD et al., Respondents. TESTQUEST, INC., Appellant; COMMISSIONER OF LABOR, Respondent. [903 NYS2d 198]—

Spain, J. Appeals from six decisions of the Unemployment Insurance Appeal Board, filed August 12, 2008, which ruled that TestQuest, Inc. was liable for unemployment insurance contributions on remuneration paid to claimants and others similarly situated.

The New York City Department of Education (hereinafter Department) administers supplemental educational services in accordance with the Federal No Child Left Behind program. As an approved provider of such services, TestQuest, Inc. operates pursuant to a contract with the Department and retains tutors, like claimants, who meet with eligible students outside of school hours to conduct lessons in English and mathematics. In separate decisions, the Unemployment Insurance Appeal Board determined that an employer-employee relationship existed between TestQuest and claimants, as well as other similarly situated tutors, and assessed TestQuest additional unemployment insurance contributions. TestQuest appeals.

A determination as to whether an employer-employee relationship exists "involves an assessment of the extent to which the alleged employer exercises control over the results and, more importantly, the means by which those results are produced" (*Matter of Omnipop, Inc. [Commissioner of Labor]*, 68 AD3d 1575, 1576 [2009]). Although such a determination will be upheld if it is supported by substantial evidence (*see Matter of Chorba [Sterling Testing Sys., Inc.—Commissioner of Labor]*, 54 AD3d 1091, 1092 [2008]), here, we agree with TestQuest's claim that the record lacks indicia demonstrating the requisite level of control. Rather, the proof reflects policies consistent with Department regulations governing the conduct

of approved supplemental education service providers such as TestQuest (*see generally Matter of International Student Exch. [Commissioner of Labor]*, 302 AD2d 834, 835-836 [2003]; *Matter of McCabe & Willig Realty [Ross]*, 80 AD2d 935, 936 [1981]). In that regard, TestQuest supplies its tutors with staff identification cards and requires that they submit time sheets, complete student education plans and adhere to a code of conduct and ethical guidelines because such practices are prerequisites to becoming an approved supplemental educational service provider (*see* NYC Department of Education, No Child Left Behind Supplemental Educational Services 2009-2010 Policy and Implementation Manual for Providers and School Administrators). Indeed, the forms designated to be used as time sheets and education plans are issued to the provider by the Department, and the Department mandates that any individual offering supplemental educational services on behalf of an approved provider act in accordance with the Department's Professional Code of Conduct and Ethics contained within its Supplemental Educational Services Policy and Implementation Manual.

Moreover, TestQuest does not assign tutors to students (*cf. Matter of Faculty Tutoring Serv. [Sweeney]*, 244 AD2d 744, 744 [1997]) or determine when,* whether or how tutors conduct their lessons. Instead, tutors themselves select students from a database provided to TestQuest by the Department based on geographic or scheduling availability. Then, a tutor contacts the child's parent(s) or guardian(s) to schedule tutoring sessions. Aside from a one-day informational meeting intended to instruct tutors on how to complete the forms provided by the Department, tutors receive no training, they are not required to use any specific materials and there is no designated curriculum. Notably, tutors are never observed while tutoring and do not receive feedback (*cf. Matter of Viig [Hello World Language Ctr., Inc.—Commissioner of Labor]*, 66 AD3d 1064, 1065 [2009]; *Matter of Fitness Plus [Commissioner of Labor]*, 293 AD2d 909, 910 [2002]), they are not prohibited from working for TestQuest's competitors (*cf. Matter of Montalto [Early Intervention Ctr. of Suffolk—Commissioner of Labor]*, 263 AD2d 736, 737 [1999]) and they are not reimbursed for expenses (*cf. Matter of Interlandi [Cremosa Foods Co., LLC—Commissioner of Labor]*, 70 AD3d 1150, 1151 [2010]; *Matter of Franks [McClure—Commissioner of Labor]*, 255 AD2d 844, 845 [1998]). Accordingly, while the factors cited by the Board—such as TestQuest's payment of tutors or its handling of parental complaints—constitute some evidence of incidental control, the record does not demon-

---

* However, lessons must take place outside of regular school hours.

strate sufficient evidence of overall control over important aspects of the services rendered so as to reflect an employer-employee relationship (*see Matter of Ted Is Back Corp. [Roberts]*, 64 NY2d 725, 726 [1984]; *Matter of Omnipop, Inc. [Commissioner of Labor]*, 68 AD3d at 1577; *Matter of Rodriguez [2020 Video Voice Data, Ltd.—Commissioner of Labor]*, 58 AD3d 929, 930 [2009]; *Matter of International Student Exch. [Commissioner of Labor]*, 302 AD2d at 835-836).

In light of our holding, we need not discuss TestQuest's due process argument.

Cardona, P.J., Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the decisions are reversed, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.