State of New York
Supreme Court, Appellate Division
Third Judicial Department

Decided and Entered:    October 20, 2016                521187
_____

In the Matter of EIBER
    TRANSLATIONS, INC.,
                        Appellant.
                                        MEMORANDUM AND ORDER
COMMISSIONER OF LABOR,
                        Respondent.
_____

Calendar Date:   September 14, 2016

Before:   McCarthy, J.P., Lynch, Rose, Devine and Mulvey, JJ.

_____

        Whiteman Osterman & Hanna LLP, Albany (John J. Henry of
counsel), for appellant.

        Eric T. Schneiderman, Attorney General, New York City (Mary
Hughes of counsel), for respondent.

_____

Devine, J.

        Appeal from a decision of the Unemployment Insurance Appeal
Board, filed September 29, 2014, which assessed Eiber
Translations, Inc. for additional unemployment insurance
contributions.

        Eiber Translations, Inc. supplies language interpretation
and translation services to its clients performed by interpreters
and translators (hereinafter collectively referred to as
interpreters) selected from its computer database.  Following an
audit, the Department of Labor issued a determination finding
that Eiber owed additional unemployment insurance contributions
due to remuneration it had paid to the interpreters from 2007 to
2009.  Eiber objected upon the ground that the interpreters were
independent contractors and, after a hearing, an Administrative
Law Judge sustained the objection.  The Unemployment Insurance

Appeal Board found that the interpreters were employees and reversed.  Eiber appeals, and we now reverse.

Whether an employer-employee relationship exists is a question of fact for the Board, and its determination will be upheld if supported by substantial evidence in the record (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of Bin Yuan [Legal Interpreting Servs., Inc.—Commissioner of Labor], 140 AD3d 1550, 1550 [2016]).  An employer-employee relationship ordinarily exists where the putative employer exercises control over the results produced or the means used to achieve the results, with control over the latter of more importance (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437; Matter of Bin Yuan [Legal Interpreting Servs., Inc.—Commissioner of Labor], 140 AD3d at 1551).  That being said, "incidental control over the results produced without further indicia of control over the means employed to achieve the results will not constitute substantial evidence of an employer-employee relationship" (Matter of Ted Is Back Corp. [Roberts], 64 NY2d 725, 726 [1984]; see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d at 437).

Here, Eiber would place any individual on its list of interpreters so long as his or her resumé indicated that he or she had experience in the industry (see e.g. Matter of Richins [Quick Change Artistry, LLC—Commissioner of Labor], 107 AD3d 1342, 1344 [2013]).  Eiber did not enter into a written contract with the interpreters, did not supervise them or evaluate their work and did not forbid them from working for competitors.  The interpreters were not required to attend any training or meetings by Eiber, nor were they provided with any materials or equipment, given fringe benefits or reimbursed for expenses.  Eiber's involvement was limited to forwarding the resumés of qualified interpreters to clients for selection purposes or, if time did not permit a client review, to directly gauge an interpreter's availability.  The selected interpreter was notified of the time and place that the client expected him or her to work and was free to decline the assignment.  The interpreter was also free to

perform an accepted assignment in whatever manner he or she saw fit, including by walking out if he or she had issues with a client, retaining assistants or substitutes to do the work or leaving it unfinished in the event of a scheduling conflict. The interpreter would then send an invoice to Eiber on his or her own form that charged an hourly rate of his or her own choosing, and Eiber would bill the client for the invoice amount plus a fee to account for Eiber's involvement in arranging the services (compare Matter of Spinnell [Commissioner of Labor], 300 AD2d 770, 771 [2002], and Matter of Seaver [Glens Falls Newspapers–Hartnett], 162 AD2d 841, 842 [1990], with Matter of Ruano [Legal Interpreting Servs., Inc.–Commissioner of Labor], 118 AD3d 1088, 1089 [2014], lv dismissed 24 NY3d 1039 [2014], and Matter of FMI Interpreting Servs. [Hudacs], 192 AD2d 1006, 1006 [1993]).[1]

The record accordingly demonstrates that the interpreters were autonomous and that Eiber acted as little more than an intermediary between them and the clients. Thus, while the Board cited factors such as Eiber's practice of paying "bust fees" to interpreters if their assignments were canceled and its fielding of client complaints, such evidence of "incidental control over the results produced without further indicia over the means employed to achieve the results" was insufficient to establish an employer-employee relationship (Matter of Ted Is Back Corp. [Roberts], 64 NY2d at 726; see Matter of Leazard [TestQuest, Inc.–Commissioner of Labor], 74 AD3d 1414, 1416 [2010]; Matter of International Student Exch. [Commissioner of Labor], 302 AD2d

---

[1] The Board misleadingly asserted in its decision, and continues to suggest upon appeal, that Eiber was free to determine that the hourly rates charged by the interpreters were too high. The record instead reveals that Eiber would try to avoid billing disputes by referring interpreters who charged hourly rates that were acceptable to the specific client. Eiber would only take action if it were unable to charge the client the full amount sought by the interpreter, and the nature of that action was not specified in the record. The hearing testimony indicated, in fact, that Eiber would "accept whatever fee [the interpreters] submit[ted]."

834, 835 [2003]; Matter of Pavan [UTOG 2-Way Radio Assn.–
Hartnett], 173 AD2d 1036, 1038 [1991], lv denied 78 NY2d 857
[1991]).

Eiber's remaining contentions have been rendered academic
in light of the foregoing.

McCarthy, J.P., Lynch, Rose and Mulvey, JJ., concur.

ORDERED that the decision is reversed, without costs, and
matter remitted to the Unemployment Insurance Appeal Board for
further proceedings not inconsistent with this Court's decision.

ENTER:

Robert D. Mayberger
Clerk of the Court