Matter of Debora (Legal Interpreting Servs., Inc.--Commissioner of Labor) (2022 NY Slip Op 00228)





Matter of Debora (Legal Interpreting Servs., Inc.--Commissioner of Labor)


2022 NY Slip Op 00228


Decided on January 13, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 13, 2022

531878
[*1]In the Matter of the Claim of Fausto Debora, Respondent. Legal Interpreting Services, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 15, 2021

Before:Egan Jr., J.P., Lynch, Clark, Aarons and Pritzker, JJ.

Greenberg Traurig, LLP, New York City (Jerrold F. Goldberg of counsel), for appellant.
Salvatore C. Adamo, Albany, for Fausto Debora, respondent.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Commissioner of Labor, respondent.



Clark, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed February 3, 2020, which ruled, among other things, that Legal Interpreting Services, Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Legal Interpreting Services, Inc. (hereinafter LIS) provides foreign language interpreting services, among other services, to its clients, including the US Immigration and Customs Enforcement Agency (hereinafter ICE), and, to that end, maintains a database of individual linguists, such as claimant. Claimant applied for unemployment insurance benefits in January 2017, and the Unemployment Insurance Appeal Board ultimately determined that claimant was an employee of LIS and that LIS was liable for remuneration paid to him and others similarly situated, effective at least the first quarter of 2014. LIS appeals.
"It is well[]settled that whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the . . . [B]oard, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary decision" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks, brackets and citations omitted]; accord Matter of Lowry [Uber Tech., Inc.-Commissioner of Labor], 189 AD3d 1863, 1863 [2020], lv dismissed 37 NY3d 1045 [2021]). Although "no single factor is determinative, control over the results produced or the means used to achieve those results are pertinent considerations, with the latter being more important" (Matter of Lee [AXA Advisors LLC-Commissioner of Labor], 196 AD3d 975, 976 [2021] [internal quotation marks and citations omitted]; see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d 1190, 1191 [2021]). "Further, an organization [that] screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d 755, 757 [2019] [internal quotation marks and citations omitted]; accord Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d 1550, 1551 [2016], lv dismissed 29 NY3d 968 [2017]). Finally, "[s]ubstantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020] [internal quotation marks, brackets and citations omitted]; see Matter of Rodriguez [Penn Mut. Life Ins. Co.-Commissioner of Labor], 193 AD3d at 1191).
The record [*2]reveals that claimant worked as a linguist for ICE through a different vendor prior to LIS being awarded the ICE contract. When claimant heard that LIS was awarded the contract, he inquired about fulfilling the same role for LIS.[FN1] LIS reviewed claimant's resume to ensure that he had the proper qualifications and security clearances and had achieved the appropriate test scores on a government-approved language test, all required by ICE. LIS and claimant negotiated claimant's pay rate, and claimant was required to sign a written agreement with LIS confirming that rate, among other things. When LIS receives a request for interpretation/translation services from ICE, it sends out a mass email to the linguists in its database that were approved to work for ICE and the job is assigned on a first-come, first-served basis. Linguists are free to decline assignments. LIS provides the assigned linguist with certain specifics on the assignment, including its date and location, and relays to the client the linguist assigned. Once an assignment is accepted, the linguist may procure a substitute if he or she is unable to fulfill the assignment, provided that LIS verifies that the substitute has the necessary qualifications and security clearance. LIS required that linguists submit invoices after completing assignments, and payment of the linguists is not contingent upon LIS being paid by its clients. Under these circumstances, the Board's finding of an employment relationship is supported by substantial evidence and it will not be disturbed, despite evidence that could support a contrary result (see Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d at 1551-1552 [2016]; Matter of Ruano [Legal Interpreting Servs., Inc.-Commissioner of Labor], 118 AD3d 1088, 1089 [2014], lv dismissed 24 NY3d 1039 [2014]; compare Matter of Eiber Translations, Inc. [Commissioner of Labor], 143 AD3d 1080, 1082 [2016]).
We reject LIS's contention that the Board failed to follow Department of Labor guidelines adopted to assist in determining the existence of an employment relationship within the translating and interpreting industry. The guidelines underscore that "[n]o one single factor is controlling" (New York State Department of Labor, Guidelines for Determining Worker Status: Translating and Interpreting Industry, http://dol.ny.gov/system/files/documents/2021/02/ia318.20.pdf [last updated Dec. 2020]) and "'we discern no inconsistency between [the Board's] decisions and such guidelines, which expressly adopt the well-established common-law tests of master and servant'" (Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d at 1552, quoting Matter of Soo Tsui [Language Servs. Assoc., Inc-Commissioner of Labor], 135 AD3d 1098, 1100 [2016]).
Egan Jr., J.P., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: LIS also posted its ongoing need for linguists on various social media job sites.