Matter of Cavlak (Language Servs. Assoc., Inc.--Commissioner of Labor) (2022 NY Slip Op 00705)





Matter of Cavlak (Language Servs. Assoc., Inc.--Commissioner of Labor)


2022 NY Slip Op 00705


Decided on February 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 3, 2022

532488
[*1]In the Matter of the Claim of Asli Cavlak, Respondent. Language Services Associates, Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Blank Rome LLP, New York City (Stephen E. Tisman of counsel), for appellant.
Salvatore C. Adamo, Albany, for Asli Cavlak, respondent.
Letitia James, Attorney General, New York City (Mary Hughes of counsel), for Commissioner of Labor, respondent.



Egan Jr., J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed May 19, 2020, which ruled, among other things, that Language Services Associates, Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Language Services Associates, Inc. (hereinafter LSA) provides language interpretation and document translation services. Claimant, a Turkish-English interpreter and translator, began working for LSA in October 2013. She later filed an application for unemployment insurance benefits in May 2017, citing a lack of work. The Department of Labor issued initial determinations finding that claimant was an employee of LSA, rather than an independent contractor, and that LSA was thus liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated. Various proceedings ensued and, following multiple hearings, an Administrative Law Judge sustained the initial determinations through March 8, 2018, finding, among other things, that claimant's formation of a corporation on that date rendered her an independent contractor thereafter. Upon LSA's application, and following a review of the record, the Unemployment Insurance Appeal Board, in two identical decisions filed May 19, 2020, adopted the Administrative Law Judge's determination concerning claimant's status as an employee but reversed the finding that such status ended on March 8, 2018. This appeal by LSA followed.
We affirm. "Whether an employer-employee relationship exists is a factual determination for the Board, and its decision will be upheld if supported by substantial evidence" (Matter of Aleksanian [Corporate Transp. Group, Ltd.-Commissioner of Labor], 180 AD3d 1307, 1308 [2020] [internal quotation marks and citations omitted]; see Matter of Sischo [Safeguard Props. LLC-Commissioner of Labor], 180 AD3d 1112, 1112-1113 [2020], lv denied 35 NY3d 915 [2020]). This is so "even though there [may be] evidence in the record that would have supported a contrary conclusion" (Matter of Thorndike [Penn Mut. Life Ins. Co.-Commissioner of Labor], 185 AD3d 1255, 1256 [2020] [internal quotation marks and citations omitted], lv dismissed 37 NY3d 1090 [2021]). Whether an employer-employee relationship exists may rest on "evidence show[ing] that the [purported] employer exercises control over the results produced or the means used to achieve the results[;] [h]owever, control over the means is the more important factor to be considered" (Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010] [internal quotation marks and citations omitted]; see Matter of Thorndike [Penn Mut. Life Ins. Co.-Commissioner of Labor], 185 AD3d at 1256).
The record reflects that LSA actively advertises available interpreter/translator opportunities and uses various channels to recruit qualified individuals. As part of LSA's recruitment process[*2], claimant underwent a thorough review and verification of her qualifications. Claimant also executed a standard written one-year, renewable agreement with LSA requiring her to adhere to applicable industry standards and government imposed and industry recognized "code[s] of conduct, rules, laws, standards, practices, or procedures" in her completion of work assignments for LSA. The agreement further required claimant to complete her assignments in conformity with LSA clients' lawful requests and that she adhere to LSA's privacy and nondisclosure and document retention policies. She was not, however, prohibited from working for other entities.
Upon a client's request for interpreting or translation services, which would be made to LSA directly, LSA, through its own software program or call-center staff, would identify and contact interpreters appropriate for the service requested. Although claimant was free to accept or reject an offered assignment without penalty, the record reflects that LSA nevertheless tracks an interpreter's acceptance rate and will contact the interpreter if assignments are consistently rejected. Once an assignment is accepted, however, LSA provides any necessary details and requirements to the interpreter and may contact an interpreter on behalf of a client to check on his or her status. Further, LSA monitors client complaints and, depending on the language, an interpreter's work product, and it may discharge an interpreter upon a "very serious breach" of the written agreement or if a client reports a significant issue. The written agreement further provides that claimant was not permitted to delegate or subcontract her assignments without prior notice to LSA. In such an event, the agreement permitted claimant to find a substitute on her own, but her choice was nevertheless governed by LSA's qualification standards. Alternatively, LSA would find a substitute on claimant's behalf.
Claimant was paid for her work by LSA directly based upon an agreed-upon rate. She was not required to submit invoices for her completed work, as LSA's own software system is able to track an interpreter's time spent on interpretations and word-count produced for document translations as part of the payment calculation. Although on March 8, 2018 claimant formed a corporation, Asil Translation, Inc., and LSA entered into an agreement with said corporation in December 2018, LSA did not produce any evidence of payments to the corporate entity. In view of the foregoing, although record evidence could support a contrary result, we find that substantial evidence supports the Board's determinations that an employer-employee relationship existed (see Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d 1550, 1551 [2016], lv dismissed 29 NY3d 968 [2017]; Matter of Soo Tsui [Language Servs. Assoc., Inc.-Commissioner of Labor], 135 AD3d 1098, 1099 [2016]; compare Matter of Eiber Translations, Inc. [Commissioner [*3]of Labor], 143 AD3d 1080, 1081-1082 [2016]). Moreover, contrary to LSA's contention, we discern no inconsistency between the Board's determinations and the Department of Labor's relevant guidelines regarding the existence of an employment relationship, as "no single factor is determinative" and the facts of this case are consistent with "the well-established common-law tests of master and servant" (Matter of Soo Tsui [Language Servs. Assoc., Inc.-Commissioner of Labor], 135 AD3d at 1100; see New York State Department of Labor, Guidelines for Determining Worker Status: Translating and Interpreting Industry, https://dol.ny.gov/system/files/documents/
2021/02/ia318.20.pdf). We similarly reject LSA's contention that the Board improperly held that its determinations as to the existence of an employment relationship applied to all other similarly situated interpreters and translators, as the factual circumstances surrounding another individual's employment relationship may be addressed in a separate proceeding (see Labor Law § 620 [1] [b]; Matter of Sischo [Safeguard Props. LLC-Commissioner of Labor], 180 AD3d at 1114).
LSA's further contention that claimant is not eligible for unemployment benefits because she was not totally unemployed was not raised at the administrative proceedings and, thus, is not properly before us (see Matter of Vargas v Hampton Inn 35th St., 189 AD3d 1857, 1858 [2020]; Matter of Rabess [Commissioner of Labor], 104 AD3d 988, 989 [2013]; Matter of Ours [Commissioner of Labor], 268 AD2d 669, 669 [2000]). To the extent that LSA's remaining claims are properly before us, we have considered them and find them to be without merit (see Matter of Martell [Hearst Corp.-Commissioner of Labor], 179 AD3d 1227, 1228 [2020]).
Lynch, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decisions are affirmed, without costs.