Matter of Patsis (Geneva Worldwide Inc.--Commissioner of Labor) (2022 NY Slip Op 02599)

Matter of Patsis (Geneva Worldwide Inc.--Commissioner of Labor)

2022 NY Slip Op 02599

Decided on April 21, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 21, 2022

533160
[*1]In the Matter of the Claim of Louiza Patsis, Respondent. Geneva Worldwide Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:March 24, 2022

Before:Egan Jr., J.P., Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ.

Greenberg Traurig, LLP, New York City (Jerrold F. Goldberg of counsel), for appellant.
Clea Weiss, Ithaca, for Louiza Patsis, respondent.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for Commissioner of Labor, respondent.

Egan Jr., J.P.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed October 6, 2020, which ruled that Geneva Worldwide Inc. was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Geneva Worldwide Inc. provides foreign language interpretation and translation services to both private and government sector clients through its database of individuals, including linguists like claimant. Claimant filed for unemployment insurance benefits and, ultimately, the Unemployment Insurance Appeal Board found that claimant and those similarly situated were employees of Geneva and ruled that Geneva was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated, effective the first quarter of 2017. Geneva appeals.
We affirm. Whether an employer-employee relationship exists within the meaning of the unemployment insurance law is a question of fact for the Board to determine, and its decision will be upheld if supported by substantial evidence (see Matter of Empire State Towing & Recovery Assn., Inc. [Commissioner of Labor], 15 NY3d 433, 437 [2010]; Matter of Cavlak [Language Servs. Assocs., Inc.-Commissioner of Labor], 202 AD3d 1178, 1179 [2022]; Matter of Patsis [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d 1166, 1167 [2022]). Substantial evidence requires less than a preponderance of the evidence and, as such, if the evidence reasonably supports the Board's choice, we will not interpose our judgment to reach a contrary conclusion (see Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020]). In determining whether an employment relationship exists, no one factor is determinative; rather, "[a]ll aspects of the arrangements must be examined to determine whether the degree of control and direction reserved to the purported employer establishes an employment relationship" (Matter of Brown [Plannernet, Inc.-Commissioner of Labor], 195 AD3d 1329, 1331 [2021] [internal quotation marks and citations omitted]). "Further, an organization that screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Debora [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d 1164, 1165 [2022] [internal quotation marks, brackets and citations omitted]).
The record establishes that Geneva screens potential interpreters like claimant by having them submit a resume to Geneva detailing the type of assignments they have done in the past for other agencies and specifically disclosing how many years of experience interpreting and the type of interpreting they have done. Geneva asks that the interpreters have at least two years of experience. Geneva's internal recruitment team then has a conversation with the interpreter regarding his or her skills — although there [*2]is no verification of the information provided — before deciding if the interpreter is able to take an assignment for Geneva and be added to its roster of linguists. The interpreter then signs a contract setting forth the negotiated rate of pay, which rate depends on the assignment and type of interpretation service being provided. The contract specifies the content of the invoice that is to be submitted to Geneva by interpreters and when such invoice should be submitted. The contract also directs interpreters to give Geneva 24 hours of notice if unable to perform an assignment. Interpreters are also bound by confidentiality and nondisclosure of any information obtained during an assignment.
When Geneva receives a request from a client for an interpreter, Geneva sends an "email blast" to those interpreters qualified for an assignment. From the interpreters that indicate in response to the email blast that they are available, a Geneva coordinator then selects an interpreter for the assignment, generally based upon who is first to respond and whose hourly rate does not exceed the contract rate the client is paying to Geneva, although Geneva is, at times, willing to take a loss on the assignment in order to keep the client happy. The selected interpreter is then sent more details about the assignment. Geneva will also directly text or email an interpreter in order to fill an assignment.
If the interpreter is late to an assignment, the interpreter loses the guaranteed two-hour minimum pay rate for that assignment. Geneva requires notice if the interpreter becomes unavailable and will provide substitutes, if necessary. Complaints from clients can be directed to Geneva and can result in the interpreter being removed from Geneva's roster. At the conclusion of the assignment, the interpreter is required to submit an invoice reflecting specific information, including the date, pay rate and time spent on an assignment, which Geneva verifies with the client. Geneva handles billing and collects a fee from the client for the interpreter assignment, at which point the interpreter is paid by Geneva.
Although evidence in the record could support a contrary conclusion, substantial evidence nevertheless supports the Board's determinations that Geneva exercised or reserved the right to exercise sufficient direction and control over claimant and those similarly situated in relation to the assignment as interpreters in order to constitute an employer-employee relationship (see Matter of Debora [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d at 1165-1166; Matter of Patsis [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d at 1167-1168; Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d 1550, 1551-1552 [2016], lv dismissed 29 NY3d 968 [2017]). Further, we find no error in the Board finding that the circumstances herein are distinguishable from those in Matter of Eiber Translations, Inc. [*3](Commissioner of Labor) (143 AD3d 1080 [2016]). Furthermore, we are unpersuaded by Geneva's contention that the Board's decisions are arbitrary and capricious given the Department of Labor's guidelines pertaining to employment status in the translating and interpreting industry (see Matter of Cavlak [Language Servs. Assocs., Inc.-Commissioner of Labor], 202 AD3d at 1180; Matter of Debora [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d at 1166; Matter of Patsis [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d at 1168). Geneva's remaining contentions have been reviewed and found to be without merit.
Aarons, Reynolds Fitzgerald, Fisher and McShan, JJ., concur.
ORDERED that the decisions are affirmed, without costs.