Matter of Colon (Geneva Worldwide Inc.--Commissioner of Labor) (2023 NY Slip Op 06420)

Matter of Colon (Geneva Worldwide Inc.--Commissioner of Labor)

2023 NY Slip Op 06420

Decided on December 14, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 14, 2023

535923
[*1]In the Matter of the Claim of Misael Colon, Respondent. Geneva Worldwide Inc., Appellant. Commissioner of Labor, Respondent.

Calendar Date:November 21, 2023

Before:Garry, P.J., Lynch, Ceresia, Fisher and Powers, JJ.

Greenberg Traurig, LLP, New York City (Jerrold Goldberg of counsel), for appellant.
David E. Woodin, Catskill, for Misael Colon, respondent.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for Commissioner of Labor, respondent.

Ceresia, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed January 24, 2022, which ruled that Geneva Worldwide Inc. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Geneva Worldwide Inc. provides foreign language interpretation, translation and/or transcription services to both private and government sector clients through its database of individual linguists, which includes linguists like claimant. Claimant filed for unemployment insurance benefits and, ultimately, the Unemployment Insurance Appeal Board found that claimant and those similarly situated were employees of Geneva and ruled that Geneva was liable for additional unemployment insurance contributions on remuneration paid to claimant and others similarly situated, effective the first quarter of 2016. Geneva appeals.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review even though there is evidence in the record that would have supported a contrary conclusion" (Matter of Gisser [iTutor.com, Inc.-Commissioner of Labor], 211 AD3d 1258, 1258-1259 [3d Dept 2022] [internal quotation marks and citations omitted], lv dismissed 39 NY3d 1128 [2023]; see Matter of Debora [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d 1164, 1164 [3d Dept 2022], lv dismissed 39 NY3d 934 [2022]). "Substantial evidence is a minimal standard requiring less than a preponderance of the evidence. As such, if the evidence reasonably supports the Board's choice, we may not interpose our judgment to reach a contrary conclusion" (Matter of Vega [Postmates Inc.-Commissioner of Labor], 35 NY3d 131, 136-137 [2020] [internal quotation marks, brackets and citations omitted]). "[T]he Board considers a number of factors in determining whether a worker is an employee or an independent contractor, examining all aspects of the arrangement. But the touchstone of the analysis is whether the employer exercised control over the results produced by the worker or the means used to achieve the results" (id. at 137 [internal quotation marks and citations omitted]; accord Matter of Chichester [Northeast Logistics, Inc.-Commissioner of Labor], 204 AD3d 1195, 1196 [3d Dept 2022]). "Further, an organization that screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of Patsis [Geneva Worldwide Inc.-Commissioner of Labor], 204 AD3d 1278, 1279 [3d Dept 2022] [internal quotation marks and citations omitted], lv dismissed 39 NY3d 972 [2022]; see Matter of Gisser [iTutor.com, Inc.-Commissioner of Labor], 211 AD3d at 1259).
The record establishes that Geneva screens potential linguists, such [*2]as claimant, by advertising for linguists and asking them to submit a resume detailing their linguistic experience. Geneva's internal recruitment team then has a conversation with the linguist regarding his or her skills before deciding if the linguist is able to take an assignment for Geneva and be added to its roster of linguists. The linguist then signs an agreement setting forth the negotiated rate of pay, which depends on the assignment and type of service being provided. Geneva sets the hourly rate unless the linguist is successful in negotiating a different rate. The agreement specifies the content of the invoice that is to be submitted to Geneva by linguists and when such invoice should be submitted. The agreement also directs linguists to give Geneva 24 hours' notice if unable to perform an assignment, and linguists are also bound by confidentiality and nondisclosure of any information obtained during an assignment.
Geneva maintains a case assignment system through which Geneva's coordinators match its clients with linguists — who are tagged in their computer system according to the linguists' skills — based upon the clients' needs. Once Geneva determines the cohort of linguists that would be suitable for a particular client, Geneva "blasts out emails" to those linguists qualified for an assignment based upon skills and/or location. From the linguists that indicate in response to the email blast that they are available, a Geneva coordinator then selects a linguist for the assignment, generally based upon location, who is first to respond, the hourly rate of the linguist and the clients' needs — although Geneva is, at times, willing to take a loss on the assignment in order to maintain client satisfaction. The selected linguist is then sent more details about the assignment. Geneva will also directly text or email a linguist in order to fill an assignment. If the selected linguist later declines the assignment or otherwise becomes unavailable, Geneva requests notice and finds a replacement linguist from its roster. Complaints from clients can be directed to Geneva and can result in the linguist being removed from Geneva's active roster. At the conclusion of the assignment, the linguist is required to submit an invoice reflecting specific information, including the date, pay rate and time spent on an assignment, along with Geneva's verification of service form. Geneva handles billing and collects a fee from the client for the linguist's assignment, at which point the linguist is paid by Geneva.
Given the foregoing, the Board's finding of an employment relationship is supported by substantial evidence and will not be disturbed despite evidence that could support a contrary result (see Matter of Patsis [Geneva Worldwide Inc.-Commissioner of Labor], 204 AD3d at 1279-1280; Matter of Debora [Legal Interpreting Servs., Inc.-Commissioner of Labor], 201 AD3d at 1165-1166; Matter of Patsis [Legal Interpreting Servs., Inc.-Commissioner of Labor], [*3]201 AD3d 1166, 1167-1168 [3d Dept 2022]; Matter of Bin Yuan [Legal Interpreting Servs., Inc.-Commissioner of Labor], 140 AD3d 1550, 1551-1552 [3d Dept 2016], lv dismissed 29 NY3d 968 [2017]). Moreover, the Board did not err in distinguishing the facts of this case from those in Matter of Eiber Translations, Inc. (Commissioner of Labor) (143 AD3d 1080 [3d Dept 2016]) (see Matter of Patsis [Geneva Worldwide Inc.-Commissioner of Labor], 204 AD3d at 1280). "Furthermore, we are unpersuaded by Geneva's contention that the Board's decisions are arbitrary and capricious given the Department of Labor's guidelines pertaining to employment status in the translating and interpreting industry" (id. at 1280-1281[citations omitted]). Geneva's remaining contentions have been reviewed and found to be without merit.
Garry, P.J., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the decisions are affirmed, without costs.